IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

DENNIS STIVERS                                                                            PLAINTIFF

v.                                       No. 5:14-cv-34 DPM-JTR

DR. SONJA PEPPER-DAVIS;
WENDY KELLEY, Medical Director;
ROGER CAMERON,
Drug & Alcohol Program Director;
RON CHISM, Substance Abuse Program Coordinator;
and DR. ROBERT A. FLOSS                                                          DEFENDANTS

ORDER

1. Defendants' motions for summary judgment have been pending for more than two months. Drs. Peppers-Davis and Floss filed their motion first. Magistrate Judge Ray ordered Stivers to respond and warned of the consequences of leaving the motion unanswered. № 74. Magistrate Judge Ray issued a similar order after Cameron, Kelley, and Chism filed their motion. № 75. The Court withdraws the reference to Magistrate Judge Ray. Stivers hasn't responded to either motion. In the circumstances, the Court accepts as true the defendants' statements of fact. LOCAL RULE 56.1(c).

Stivers has a history of committing crimes while intoxicated. The parole board therefore conditioned Stivers's parole eligibility on his successfully

completing a nine-month therapeutic community program. If Stivers chose not to complete the program, then he would have to serve his entire six-year prison sentence.

In December 2012, Stivers was transferred to the Tucker Unit to begin the program. Stivers's days started at 6:00 a.m., and he did not return to his bunk until 5:00 p.m. Those hours were filled with classes and group sessions, which required no physical labor. Stivers had back problems before he entered the program. Because the long days were hard on his back, he sought a waiver that would have allowed him to quit the program but still be eligible for early parole.

In January 2012, Dr. Peppers-Davis ordered an MRI, which revealed that Stivers had degenerative disc disease, a herniated disc, neuropathy, and lumbar stenosis. A private orthopedic specialist recommended treating Stivers's back problems with steroid injections and pain medication. The specialist also suggested that Stivers limit his physical activities. Dr. Peppers-Davis agreed. But instead of giving Stivers a wavier, Dr. Peppers-Davis issued medical restrictions prohibiting Stivers from performing any strenuous physical activities, as well as sitting or standing for more than fifteen minutes

at a time. Ronald Chism, who supervised the program, followed those medical restrictions and allowed Stivers to sit or stand, as needed. Nevertheless, Stivers chose to quit the therapeutic community program.

Soon after, Stivers was transferred to the Delta Regional Unit where he continued to seek a waiver from the program. In June 2013, the orthopedic specialist examined Stivers again and noted, "Condition is permanent. Only possible treatment would be lumbar fusion L3-S1. Patient Medical Waiver. 3 months." № 70-2 at 18. Dr. Robert Floss, the ADC Regional Medical Director, interpreted that notation to mean that Stivers needed restrictions on "lifting and work related activities," not a waiver exempting him from completing the therapeutic community program. № 72-5 at 104. Dr. Floss explained in an email that was forwarded to Roger Cameron, the program director, that Stivers was physically able to complete the program "as long as the timeframe for classroom activities is not excessive." *Ibid.* Cameron then told Stivers that he was not going to receive a waiver, and that he either had to complete the program or serve all six years of his sentence. Stivers decided to reapply for the program. He was accepted.

Chism resumed accommodating Stivers by letting him stand or sit, as

needed, during classes and group sessions. In December 2013, the orthopedic specialist and Dr. Peppers-Davis disagreed about whether Stivers should receive a permanent "no duty" restriction, excluding him from all physical activity. № 70-2 at 21–25. The physicians agreed, however, that Stivers could continue to sit and stand for fifteen minutes at a time, which was the only physical activity he needed to do while in the program. *Ibid.* Accordingly, Chism continued to allow Stivers to sit and stand, as needed, during program activities.

In February 2014, the orthopedic surgeon gave Stivers the option of having corrective surgery before or after completing the therapeutic community program. Stivers chose the latter. In August 2014, Stivers successfully completed the program and was released on parole.

**2.** Before filing this lawsuit, Stivers had to exhaust his administrative remedies on each claim he has brought in his complaint against each defendant. 42 U.S.C. § 1997e(a); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). When doing so, Stivers was required to properly comply with the ADC's exhaustion rules, including the requirement that he specifically name each of the defendants in

his grievances. *Jones v. Bock*, 549 U.S. 199, 218 (2007); № 70 at Ex. A. The Eighth Circuit, however, has held that the exhaustion requirement is satisfied if prison officials bypass any procedural errors and resolve a claim on the merits. *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014); *Hammett v. Cofield*, 681 F.3d 945, 947–48 (8th Cir. 2012).

Stivers did not specifically name Wendy Kelley in any of his fully exhausted grievances; nor did prison officials address the merits of Stivers's claims against her. The fact that Kelley read and resolved Stivers's grievance appeals is immaterial. To satisfy the exhaustion requirement, Stivers was required to file a grievance specifically raising his claim against Kelley, or otherwise obtain a final ruling from prison officials on that claim. *Ibid.*; *Champion v. Akins*, 2013 WL 656797 (8th Cir. 25 Feb. 2013) (unpublished opinion). Stivers did not do so. His claims against Kelley must therefore be dismissed without prejudice.

Stivers didn't specifically name Dr. Peppers-Davis or Dr. Floss in any of the exhausted grievances. When deciding the final appeal of grievance DR-13-00329, however, Kelley specifically named Dr. Peppers-Davis and reviewed her 14 February 2013 determination that Stivers could participate

in the therapeutic community program with sitting and standing restrictions. And though Kelley did not mention Dr. Floss by name, she did review Floss's decision to interpret the orthopedist's reference to a three-month waiver as actually meaning that Stivers could participate in the program with restrictions. Stivers therefore exhausted his administrative remedies on those claims. *Hammett*, 681 F.3d at 947–48.

On the merits, Stivers alleges that Dr. Floss and Dr. Peppers-Davis violated his Eighth Amendment rights and committed medical malpractice when they disregarded the orthopedic specialist's recommendation that he receive a waiver from completing the therapeutic community program. The specialist's recommendation for a three-month waiver from completing the nine-month program, as well as his later conversation with Dr. Peppers-Davis, strongly suggests that the specialist didn't understand the difference between a *waiver* excluding Stivers from participating in the program and *restrictions* that would allow Stivers to complete the program with accommodations for his back problems. More importantly, Dr. Peppers-Davis and Dr. Floss—both of whom were more familiar with the physical requirements of the program—were free to exercise their independent

medical judgments when deciding whether Stivers was physically able to complete the program. *Hines v. Anderson*, 547 F.3d 915, 920 (8th Cir. 2008). Nothing in the record demonstrates that Dr. Floss or Dr. Peppers-Davis were deliberately indifferent when doing so. *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010). Similarly, Stivers has not produced expert testimony supporting his contention that they committed medical malpractice when making that decision. ARK. CODE. ANN. § 16-114-206(a). To the contrary, it is undisputed that Stivers was able to complete the therapeutic community program with the sitting and standing restrictions imposed by Dr. Floss and Dr. Peppers-Davis. The doctors' motion for summary judgment is therefore granted.

4. Chism concedes that Stivers fully and properly exhausted his administrative remedies against him. № 73. Cameron does not. *Ibid.* The record, however, shows that Stivers exhausted grievances that named Cameron and alleged that he would not excuse Stivers from completing the program. № 70-1. Importantly, those grievances were resolved on the merits. *Ibid.* Stivers has therefore properly exhausted his claims against Chism and Cameron.

On the merits, Chism and Cameron did not have the authority to override the doctors' professional medical opinions that Stivers was physically able to complete the therapeutic community program with sitting and standing accommodations. № 72-4; *Drake ex rel Cotton v. Koss*, 445 F.3d 1038, 1042–43 (8th Cir. 2006). Further, Chism and Cameron did not subject Stivers to cruel and unusual punishment by forcing him to complete the program. Instead, they gave Stivers the option of completing it as a gateway to an early release from prison. Stivers didn't have a constitutional or statutory right to participate in the program. *Greenholtz v. Inmates of the Neb. Penal and Corr. Complex*, 442 U.S. 1, 9-11 (1979); *Persechini v. Callaway*, 651 F.3d 802, 807–08 (8th Cir. 2011). The Court therefore grants Chism and Cameron's motion for summary judgment.

\*   \*   \*

Reference withdrawn. Motions, № 68 & 71, granted.

So Ordered.

*[signature]*
D.P. Marshall Jr.
United State District Judge

29 May 2015